Whyte, J.
delivered the opinion of the court.
The plain tiff’s recovery in the present case is resisted by the argument on two grounds: 1. That upon the pleadings and proofs in the cause, the dealings between the parties do not amount to a conditional contract or mortgage, which is contended by the plaintiff, but exhibit an absolute contract of sale, perfected by delivery; and 2. That if the contract of mortgage was established, yet the plaintiff’s claim to redemption is barred by the statute of limitations. Chancellor Kent in his Commentaries, describes a mortgage to be the conveyance of an estate by way of pledge for the security of a debt, and to become void on the payment of it; the legal ownership is vested in the creditor, but in equity the mortgagor re *518 mains the actual owner, until he is debarred by his own default, or by judicial decree. Let the import of the dealings between these parties be tested by this definition, and see whether facts and circumstances exist in them, amounting to the constitution of a mortgage. Is there the conveyance of an estate for the security of a debt? Of the existence of a debt there is no question. On the 9th of March 1825, $‘450, due from plaintiff to defendant, is acknowledged by bond and a deed of trust of that date, compounded of money lent and advanced by defendant; and to secure the payment of this sum, and collect it by sale in ten days after the 1st day of May, then next following, if not paid on that day, is the professed object of the deed. The trust deed of the 2d of October 1825, is to the same purport, the securing the payment and collection of $956, said to be due by bond of same date from plaintiff to defendant, by sale of the same negroes at the end of four months thereafter, if the said sum of $950 is not then paid, upon giving ten days notice. We have no certain data afforded either by the proofs or the answer, how this increased debt became due, other than its appearing by the bond, as it is said in the answer the bill of sale of the 20th Jan. 1826, conveying the negroes to the defendant, is absolute on ⅛ face. These documents, the two deeds of trust and the bill of sale, constitute the conveyance of the estate, that is, the negroes. Here it may be observed, that negroes may be the subject of mortgage, as well as real estate. Kent in his Commentaries, (4 vol. 132,) says, “property of eyery kind, real and personal, which is capable of sale, may become the subject of a mortgage.” These .documents have all of them reference to the same dealing between the parties, to wit, the formation and existence of a debt, with the means and mode of securing its payment, embracing one continual chain of transactions; they are therefore in construction to be taken to. gether, and viewed as one conveyance; the two first ci *519 these deeds are mortgages, both in terms and intent; they convey to the trustee Smith, his heirs and assigns forever, the negroes mentioned for the benefit of the defendant Bigelow, hut to he void if the debt of the plaintiff therein stated is paid on or before a certain time to the defendant. The latter of these documents, the bill of sale, it is true, does not import to be a mortgage, or the negroes to be a redeemable security for the payment of a debt; but is absolute on its face, unfettered by' any condition whatever. If however in fact and truth it was the contract between the parties that the subject matter of this bill of sale, the negroes, should be subject to redemption, the bill of sale, notwithstanding its absolute character on its face, shall be held a mortgage, and this its true and real purpose and intent, may be shown by parol. See 1 John. Ch. Rep. 592: 4 Kent’s Com. 136; where he says, “a deed absolute on the face of it, and though registered as a deed, will be valid and effectual as a mortgage, as between the parties, if it was intended by them to be merely a security for a debt; and this would be the case though the defeasance was by an agreement resting in parol; for parol evidence is admissible to show that an absolute deed was intended as a mortgage, and that the defeasance has been admitted by fraud or mistake.” As therefore parol evidence may be admitted to show that an absolute deed may in fact be only a mortgage, the question upon this part of the case i», whether upon the record, evidence to this amount appears.
The charge in the bill that the defendant promised or agreed that the plaintiff should keep possession of the negroes and have a reasonable time to redeem them,, though flatly denied by the answer, is supported and established by the testimony of Robertson; the efficacy of which being affirmative, is not impaired by the negative testimony of Hardwich, who says, that he does not recollect to have heard of their return or redemption.'— *520 Although no doubt can be entertained upon this testi--mony,but that it was the agreement of these parties, that the negroes should be redeemable, yet the rule of law requires corroborative circumstances in support of the testimony of the single witness, to authorize a decree against the positive denial of the answer. It is considered that such circumstances exist in this case; the whole aspect of the case from first to last, pervading the continued dealing of the parties, exhibits a contract of mortgage. The deed of the 9th of March 1825, and the deed of the 22d of October 1825, are pure mortgages upon their face, having a defeasance to be void upon payment of the debt; accompanied a so by a bond, the usual, though not an essential attendant, of the contract of mortgage. Another circumstance is, the retained and continued possession of the mortgaged property by Overton, until it was swindled from him by fraud. It is deserving of notice here, that in cases of mortgage, it was the ancient practice to insert a clause in the mortgage deed, that until default in payment, the mortgagor shall retain possession. This, says Chancellor Kent, was a very ancient practice, as early as James I. And if there be no such express agreement in the deed, it is the general understanding of the parties, and at this day almost the universal practice, founded on a presumed, or tacit consent. See 4 Kent’s Com. 142. To deprive Over-ton of this indicium of a mortgage, the possession was to be procured by Bigelow, and it was not thought too high a price to purchase at the expense of truth, by a false pretence. The evidence is that Overton was unwilling to give up the negroes. Bigelow said the law was such, that he must keep them three days, and that he would return them at the expiration of that time; he did not return them at the time agreed upon, or at any time. This conduct impresses upon the transaction ⅛ character not to be mistaken, that the contract evidenced by the deed or bill of sale was not an absolute contract *521 of sale, or why was the possession left with Overton upon the execution of the bill of sale, or why was such unfair means to be used for the purpose of obtaining that possession, which to him would he a principle characteristic of a purchase, and be removed from him in whose hands it was the like characteristic of a mortgage?
These circumstances, and several others might be mentioned, were it necessary, to satisfy us, that the contract between these parties, evidenced by the hill of sale of the 20th January, 1826, of the negroes, was a mortgage, and therefore, that the plaintiff is entitled to redeem as upon a mortgage, unless he is barred by the other defence set up in the answer, the statute of limitations, which will now be noticed. This is a question depending entirely upon authority. Kent, in his Commentaries, (vol. 4, 156-7,) says, “the power of enforcing the right of redemption is an equitable power, residing in the court of chancery; and if there be no formal equity tribunal, the power is exercised upon equitable principles in courts of law, clothed with a greater or less portion of equity jurisdiction.” Again he says, in page 180, “in all cases of concurrent jurisdiction in courts of law and equity, the statute of limitations applies equally to both courts; but it doth not apply to cases in which a court of equity has peculiar and exclusive jurisdiction.” In the case of Murray vs. Coster, (20 John. Rep. 525,) Spencer, Ch. J. says, “I have therefore no hesitation in saying, that in a case where there is a concurrent jurisdiction in the courts of common law and equity, the rule must be the same? and the statute may be pleaded with the same effect in the one court as the other. In cases of trust and fraud peculiarly, appropriately and exclusively the objects of equity jurisdiction, according to the established doctrine, the statute cannot be pleaded.” The same doctrine is laid down by Chancellor Kent, in Kane vs. Bloodgood, (7 John. Chan. Rep. 121.) And in 4 Kent’s *522 Com. 121, it is also laid down, that the right of redemption belongs exclusively to a court of equity*— These authorities are explicit, that the right of redcmption is the exclusive province of a court of equity, and that the common statute of limitations of three years, applicable to personal property, cannot be pleaded in bar to a bill in equity, brought for its redemption upon a contract of mortgage. It will not be inapplicable here to cite a short passage from Kent’s Commentaries, exhibiting the view a court of equity takes of this branch of its jurisdiction, with the chancellor’s observations upon it. He says, “the equity of redemption grew in time to be such a favorite with the courts of equity, and was so highly cherished and protected, that it became a maxim, “once a mortgage and always a mortgage.” The object of the rule is, (continues the chancellor,) to prevent oppression; and contracts made with the mortgagor to lessen, embarrass, or restrain the right of redemption, are regarded with jealousy, and generally set aside as dangerous agreements, founded in uneonscientious advantages assumed over the necessities of the mortgagor.” The propriety, the justice and the accuracy of the chancellor’s remarks in this passage, are strikingly and forcibly illustrated and proved by the acts and facts composing the present case before this court. But although equity does not permit the statute of limitations to be pleaded to the relief which it affords to the right of redemption, yet in the application of that relief, it regards time, and discountenances stale demand. Lapse of time will therefore operate as a bar to the redemption, according to circumstances. The rule of barring the equity of redemption, or the claim of the mortgage, by lapse of time, is founded in a presumption of title which may he rebutted by parol proof, or circumstances sufficient to put down or destroy the contrary presumption. 4 Kent’s Com. 182. There is no room for this presumption in the present case, *523 and therefore a redemption must he decreed, and a reference be had to the clerk and master to take an account and ascertain the amount due the defendant, allowing him such sums only as he may show hy proof he has actually advanced to the complainant, or may have paid for him, or may he due for services rendered his family as a physician, and interest thereon up to the time of taking the account, and that all other matters be reserved until the coming in of said report.
Peck, J.
Although I agree perfectly in the result, I am not satisfied with the grounds on which the case has been placed; not because there is a want of proof to make the bill of sale with the parol proof, a mortgage, but because I am disposed, under the circumstances, to look beyond the bill of sale, and place the parties where they stood before the execution of it. At the time of procuring this bill of sale, how did the parties stand in relation to each other? Overton, in the trust deed, had divested himself of the legal title. It was conveyed to Smith upon trust. This was the agreement of three parties. Overton pledges the property; Bigelow is content to take it that way to secure his demand; and Smith, clothed hy the consent of both the others, with the title, agrees on the terms expressed in the deed, to raise the money, and in this he acts for both. I will not say, that a court of equity will not permit Bigelow to purchase the equity of redemption; if, however, he does purchase it, he must do it fairly; if there is the semblance of suspicion, the court of equity will interpose and reinstate the mortgagee. 4 Kent’s Com. What are the facts touching this point? The pledged property is in the hands of the mortgagor; there are 20 days yet to come within which the mortgagor could, out of the property, raise the money and redeem; Bigelow, before any rights attached in his favor under the deed, presents himself and presses new negotiations, not to *524 purchase up the equity of redemption, for touching that, he must consult the trustee, Smith, before he could do it; he negociates with his tempest driven debtor for a covenant of warranty of title, to that which both parties knew at the time he had divested himself, when he made the deed to Smith. This is oppression and fraud upon its face, in coercing the bill of sale from Overton, when he could make none; in taking the warranty of title from him when he had no title to warrant; cutting oif Overton from the remaining 20 days allowed him in the trust deed, and in taking off the negroes. We see in all this, a fraudulent and covinous purpose, (and that purpose effectuated,) which this court ought to watch with vigilance. The whole of the subsequent transaction about the sale, should be blotted out, and the parties placed upon the original agreement. It was bad faith in Bigelow to presume to act upon his demand before the day arrived for payment; there was nothing due him until then. The threat to sacrifice the negroes, and the taking them away under a pretended bill of sale, procured as it was, were, all taken together, acts putting it out of the power of Overton to save his pledged property. I am, therefore, in this case, against going into the oral agreement, which might make the bill of sale a mortgage; because it seems to sanction the idea, that however hard the law bound, if a creditor may grasp that he may hold on, with relief against him, dependent upon the mere contingency of getting two witnesses to contradict his ambiguous answer, and against it establish a parol mortgage agreement. There being a maxim, “once a mortgage and always a mortgage,” if there be any case where it can and ought to be made to apply, this is the one. Bigelow should not be permitted to throw off at pleasure his relation to the mortgagor, and when he has done so embarrass the case with pleas of limitation, which are not admissable to a mortgage, am *525 biguous admissions and half denials, so asRo embarrass the case in the proof, and increase his chances for escape, with his usury and other accountabilities; nevertheless, the decree proposed meets my entire approbation.
Decree reversed.